UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

REGGIE CASWELL,

                    Petitioner,          **DECISION AND ORDER**
                                         **No. 11-CV-0153(MAT)**
              -vs-

STEVEN RACETTI,

                    Respondent.

## I.   Introduction

Pro se petitioner Reggie Caswell ("Caswell" or "Petitioner")
filed the instant habeas petition requesting release from detention
in Respondent's custody. Caswell is incarcerated pursuant to a
judgment of conviction against him entered on April 11, 2006, in
the New York State, Monroe County Court, after a jury trial, on
charges of Robbery in the Second Degree (New York Penal Law
("P.L.") § 160.10(2)(b)), Attempted Robbery in the Third Degree
(P.L. §§ 110.00, 160.05), and two counts of Burglary in the Second
Degree (P.L. §§ 140.25(1)(d), 140.25(2)).

## II.  Factual Background and Procedural History

### A.   Petitioner's Trial

#### 1.   The Prosecution's Case

At about 6:20 p.m. on August 27, 2005, Petitioner entered a
liquor store on East Avenue in the City of Rochester and
encountered Nelson Habecker ("Habecker"), the co-owner, and Scott
Schell ("Schell"), the cashier. T.325-26. Under the guise of buying
a bottle of gin, Petitioner grabbed Habecker by the shoulder and
forced him behind the cash register. T.327, 329. Petitioner stuck

his hand in Habecker's back, warned him not to move and threatened to kill him. T.330. Taking a chance that Petitioner was not actually holding a gun to his back, Habecker turned around and faced Petitioner, at which point Petitioner began throwing punches at Habecker. T.330-31.

During the struggle both men fell to the ground, knocking between dozens of liquor bottles off the shelf and onto the floor. T. 330-31. Petitioner sustained a laceration to his head, presumably from the broken glass, and Habecker sustained minor lacerations as well. T.333-35, 386.

Prior to running out of the store Petitioner threatened to kill Habecker. T.335. Habecker, who was able to activate the silent alarm to notify the police, pursued Petitioner on foot while Schell called 911. T.387. Schell fully corroborated Habecker's account of the robbery. T.381-82.

Petitioner fled to the nearby home of Brian and Ashley Eckman at 1341 Park Avenue. T.451. Mr. Eckman encountered Petitioner, bloodied and smelling of alcohol, at the top of the staircase. T.489. Petitioner shoved Mr. Eckman into the bedroom where Mrs. Eckman happened to be. T.489. Petitioner restrained Mr. Eckman and pressed a hard object against his back which Mr. Eckman believed to be a gun. T.494-95.

Petitioner told Mr. Eckman, "[Y]ou have a pretty wife, and if you do what I say, she won't get hurt." T.498. He then ordered the

-2-

couple to lie down on the bed. T.460, 492-93, 495. At the time, Petitioner had one hand behind his back, and both Mr. and Mrs. Eckman thought they were going to be shot. T.460, 496.

When Petitioner demanded cash, Mr. Eckman told Petitioner that he had his money downstairs in the kitchen. T.495. Holding Mr. Eckman from behind, Petitioner walked him downstairs to the kitchen, with Mrs. Eckman in front of them. T.496. Mr. Eckman noticed that Petitioner was bleeding onto his [Mr. Eckman's] clothing. T. 497.3

Once in the kitchen, either Mr. or Mrs. Eckman removed money from Mr. Eckman's wallet and handed it to Petitioner. T.464, 499. When Petitioner demanded more money, Mrs. Eckman stated that she had some in her purse, which was in her car. T.500. Petitioner and the Eckmans then went to the garage, where Mrs. Eckman removed $5 from her purse and handed it to Petitioner. T. 467. She retrieved another $19 and when she attempted to hand it to Petitioner, Petitioner directed her to give it to her husband, who handed money to Petitioner. T.467. Pushing Mr. Eckman into the rear seat of the car, Petitioner ordered Mrs. Eckman to drive them away. T.467, 470.

Meanwhile, Habecker, who had followed Petitioner in an attempt to assist the police, saw Petitioner run between some houses on Park Avenue. Eva Spencer ("Spencer"), who happened to be driving by liquor store, had seen Petitioner and Habecker run outside. T.399. Habecker encountered Spencer during his pursuit of Petitioner. At

Habecker's request, Spencer called 911 on her cell phone, and then passed the phone to Habecker, who spoke to the operator. T.336-38. Moments later, Habecker saw Petitioner inside the Eckman's garage. T.339.

Rochester Police Officer Michael Grabowski ("Grabowksi") arrived at the Eckmans' house before Petitioner and the Eckmans drove away. When Grabowski ran down the driveway, Petitioner jumped out of the car with cash in one of his hands. T.472. After a short foot-chase, Petitioner was arrested at nearby gas station. T.542-49.

At the time of his apprehension, Petitioner had a laceration on his head from which he was bleeding. T.436-37. Grabowski recovered $51 from petitioner. T.550. Following his arrest, petitioner told Rochester Police Sergeant John Woods, "You got the money back, so you caught me red handed." T.569.

Habecker, Schell, and Spencer all observed the police apprehend Petitioner near the gas station. T.343, 389, 411. Shortly thereafter Habecker identified Petitioner in a show-up procedure while Petitioner was seated in a police car outside the liquor store. T.343-44, 434-36. After Habecker viewed Petitioner, Petitioner asked Woods, "Can you ask that old guy over there to come back? I want to tell him that he put up a hell of a fight when I tried robbing him." T.572. Mr. and Mrs. Eckman, and Spencer, also

-4-

viewed Petitioner sitting in the police car and identified him as the assailant. T.411-12, 474-75, 515.

Video and still photos from the liquor store's surveillance cameras were introduced into evidence. T.347-50.

### 2.   The Defense Case

Petitioner, who acted as his own attorney with the assistance of standby counsel, called no witnesses.

### 3.   The Verdict and Sentencing

The jury found petitioner guilty of second degree robbery, two counts of second degree burglary, and attempted third degree robbery.

The trial court sentenced Petitioner, as a persistent violent felony offender under P.L. § 70.08 to concurrent indeterminate sentences of from twenty-five years to life for the second degree robbery and second degree burglary convictions, and to an indeterminate sentence of twenty years to life on the attempted third degree robbery count, to be served consecutively to Petitioner's other sentences.

### B.   Post-Conviction Proceedings in State Court

Petitioner's conviction was upheld on direct appeal. People v. Caswell, 56 A.D.3d 1300 (4th Dept. 2008), lv. denied, 11 N.Y.3d 923, recon. denied, 12 N.Y.3d 781, cert. denied sub nom., Caswell v. New York, 129 S. Ct. 2775 (2009). Petitioner filed a pro se motion to vacate the judgment of conviction pursuant to New York Criminal

Procedure Law ("C.P.L.") § 440.10, on April 21, 2009, which was denied on December 7, 1990. <u>See</u> Resp't Exs. S & V.  Petitioner also filed a <u>pro se</u> motion to set aside his sentence pursuant to C.P.L. § 440.20 on April 21, 2009, which was denied in part and granted in part on December 7, 2009, <u>see</u> Resp't Ex. S. The trial court denied all of Petitioner's claims save the attack on the sentencing for the attempted third degree robbery conviction, finding that Petitioner was ineligible for sentencing as a violent persistent felony offender on that count. Accordingly, Petitioner was resentenced on January 8, 2010, as a second felony offender to an indeterminate term of two to four years for attempted third degree robbery, to be served consecutively to the other sentences.

### C.    The Federal Habeas Petition

In his timely-filed <u>pro se</u> petition, Caswell contends that (1) he was deprived of a preliminary hearing and his right to testify in the grand jury; (2)(a) the verdict was against the weight of the evidence, (b) the evidence was legally insufficient to establish his guilt, and (c) he is actually innocent; (3) the first count of the indictment (second degree robbery under P.L. § 160.10(2)(b)) was duplicitous; (4) the prosecution concealed exculpatory material (Mr. Eckman's clothing); (5) the prosecution withheld two police reports which constituted <u>Brady</u>[1] material; (6) the trial court erroneously refused to instruct the jury on the

---

[1] <u>Brady v. United States</u>, 373 U.S. 83 (1963).

defense of justification; (7) the trial court erred in not removing the prosecutor from the case; (8) New York Civil Practice Law & Rules ("C.P.L.R.") 5525, governing settlement of the transcripts for appeal purposes, was unconstitutionally applied; (9) his direct appeal was not meaningful because the prosecutor refused to provide Petitioner with copies of certain exhibits; (10) New York's persistent violent felony statute, P.L. § 70.10, is unconstitutional; (11) the sentencing court erred in imposing consecutive sentences; (12) the prosecution did not establish that Petitioner had two predicate violent felony convictions; (13) he was improperly sentenced as a persistent violent felony offender based on a prior Illinois conviction; and (14) his sentence was harsh and excessive.

## III. Exhaustion

Before a federal court may consider the merits of a habeas claim, a petitioner is first required to exhaust his available state court remedies unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). In Rose v. Lundy, 455 U.S. 509 (1982), the Supreme Court adopted a "total exhaustion" rule by holding that a "mixed petition," i.e., a petition containing both exhausted and unexhausted claims, should be dismissed as a whole, "leaving the prisoner with the choice of returning to state court to exhaust his

claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." Id. at 510.

In 1996, Congress modified this "exhaustion rule" by the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which amended 28 U.S.C. § 2254(b)(2) to read as follows: "An application for a writ of habeas corpus may be *denied on the merits*, *notwithstanding the failure of the applicant to exhaust* the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis supplied). The Second Circuit and other circuit courts of appeals have interpreted this provision to allow courts to deny mixed petitions on the merits, but not to allow courts to grant mixed petitions on the merits. See Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001) (discussing the amendment of 28 U.S.C. § 2254(b)(2) and stating that "[a] district therefore now has the option of denying mixed petitions on the merits"); Moore v. Schoeman, 288 F.3d 1231 (10thCir. 2002); see also Rhines v. Weber, 544 U.S. 269, 277-78 (2005).

Respondent concedes that Petitioner has fully exhausted all of his claims except the following: deprivation of the right to a meaningful appeal and access to the courts based upon the prosecutor's failure to provide Petitioner with certain exhibits; failure to establish the request two predicate violent felony convictions for purposes of sentencing Petitioner as a persistent

violent felon; erroneous imposition of a consecutive sentence; harshness and excessiveness of Petitioner's sentences.

The Court has reviewed the record of the state court proceedings and the law concerning the habeas statute's exhaustion requirement, and it appears that Respondent is correct. However, all of Caswell's claims may readily be denied on the merits. Therefore, in the interest of judicial economy, and under the authority of 28 U.S.C. § 2254(b)(2), the Court will not discuss the exhaustion issue further and will proceed directly to the merits of Caswell's claims. See Boddie v. New York State Div. of Parole, 285 F. Supp.2d 421, 428 (S.D.N.Y.2003) ("[I]n habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit.") (quotation omitted).

## IV.  Analysis of the Petition

### A.   Errors at the Preliminary Hearing and the Grand Jury

Petitioner contends that he was deprived of his right to a preliminary hearing and his right to testify before the grand jury. Neither claim presents a cognizable constitutional question amenable to habeas review.

Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that [the petitioner]

is in custody in *violation of the Constitution or laws or treaties of the United States*." 28 U.S.C. § 2254(a) (emphasis supplied). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (citations omitted).

Under New York law, Caswell may have had a statutory right to a preliminary hearing if no indictment issued within five days of his arrest. See N.Y. CRIM. PROC. LAW §§ 180.10; 180.60. However, this right is not of a constitutional dimension. "[T]here is no federal constitutional right to a preliminary hearing." Strong v. Mance, No. 9:07-CV-0878-NAM-GHL, 2010 WL 1633398, at *7 (N.D.N.Y. Apr. 2, 2010) (citing, inter alia, Gerstein v. Pugh, 420 U.S. 103, 118-19 (1975) ("Instead, we adhere to the [this] Court's prior holding that a judicial hearing is not prerequisite to prosecution by information.") (citing Beck v. Washington, 369 U.S. 541, 545 (1962); other citations omitted); other citations omitted); Bilbrew v. Garvin, No. 97-CV-1422-JG, 2001 WL 91620, at *9 (E.D.N.Y. Jan. 10, 2001) (same). Thus, Casell's preliminary hearing claim is not cognizable on federal habeas review.

Petitioner's claim that errors occurred during the grand jury proceeding likewise is not cognizable on habeas review. A defendant's right to testify before the grand jury is statutorily-created. See N.Y. CRIM. PROC. LAW § 190.50(5). Furthermore, there is no federal constitutional right to indictment

by a grand jury in a state criminal prosecution. See Alexander v. Louisiana, 405 U.S. 625, 633 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."); see also LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (noting that the Fifth Amendment's right to indictment by grand jury has not been incorporated against the states through the Fourteenth Amendment). It is thus beyond question that "the right to testify before a grand jury is purely a New York state statutory right, and is not a constitutional right that can lead to relief on habeas review." Byrd v. Demarco, No. 11-CV-0750-JS, 2011 WL 809657, at *1 (E.D.N.Y. Feb. 25, 2011) (internal quotation and citations omitted) (collecting cases); Lucius v. Filion, 431 F. Supp.2d 343, 346 (W.D.N.Y. 2006).

### B. Legal Insufficiency of the Evidence, Verdict Against the Weight of the Evidence, and Actual Innocence

#### 1. Legal Insufficiency of the Evidence

Petitioner claims, as he did on direct appeal, that the evidence was insufficient to establish his guilt. The Appellate Division found that Petitioner "failed to preserve" this claim for appellate review. People v. Caswell, 56 A.D.3d at 1303. Under New York law, a criminal defendant must preserve a challenge by making a specific and timely objection. See N.Y. CRIM. PROC. LAW § 470.05(2) (codifying the "contemporaneous objection rule" which requires a party to raise the issue sought to be preserved for

-11-

appeal before the trial court at the earliest possible juncture). "The purpose of this rule is to apprise the trial judge and the prosecutor of the nature and scope of the matter defendant contests, so that it may be dealt with at that time." Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007) (quoting People v. Jones, 81 A.D.2d 22, 41-42 (2d Dept. 1981)).

Where, as here, a state court's judgment denying a claim is based on an adequate and independent state ground-be it procedural or substantive-federal habeas review of that claim is generally prohibited unless the petitioner can overcome the procedural default. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); see also Harris v. Reed, 489 U.S. 255, 261 (1989). Although only a "firmly established and regularly followed state practice" may operate to prevent subsequent review by a habeas court of a federal constitutional claim, James v. Kentucky, 466 U.S. 341, 348-49 (1984), the contemporaneous rule as applied by the Appellate Division here as been recognized as such a firmly established and regularly followed rule. Garvey v. Duncan, 485 F.3d at 714-715 ("New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error.") (citations omitted).

Because Petitioner's claim is procedurally barred by an adequate and independent state ground, this Court may consider it only if petitioner shows (1) cause for his default and actual

prejudice; or (2) that the failure to consider his claim will result in a fundamental miscarriage of justice because the petitioner is actually innocent of the crime. E.g., Wainwright v. Sykes, 433 U.S. 72, 85, 91 (1977). Petitioner summarily asserts that he has demonstrated "'cause and prejudice' resulting in a 'fundamental miscarriage of justice' in that [he] is 'actually innocent.'" Petitioner's Reply Memorandum of Law ("Pet'r Reply") at 19 (Dkt. #19). Petitioner, however, has conflated the "cause and prejudice" inquiry with the "fundamental miscarriage of justice" exception, which are analytically distinct.

To establish legal cause for his procedural default, Caswell must show that some objective external factor impeded his ability to comply with New York's procedural rules. Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Restrepo v. Kelly, 178 F.3d 634, 638 (2d Cir. 1999). Examples of external factors include interference by state officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal. Murray, 477 U.S. at 488. An attorney's mere ignorance or inadvertence is not cause, however, since the attorney is considered the defendant's agent when acting, or failing to act, in furtherance of the litigation, and the defendant must "'bear the risk of attorney error.'" Coleman, 501 U.S. at 753 (quoting Murray, 477 U.S. at 488). Petitioner has not shown that any objective external factor impeded his ability to comply with

-13-

the contemporaneous objection rule, that state officials interfered with his attempt to assert the claim, or that he was not afforded effective assistance of counsel with regard to the failure to preserve the legal insufficiency claim. Indeed, Caswell cannot attribute the error to an external cause since he was acting as his own counsel.

Given that Caswell cannot establish cause for the default, this Court need not decide whether he also suffered actual prejudice as to this claim because federal habeas relief on the basis of a procedurally defaulted claim is unavailable unless both cause and prejudice are demonstrated. See, e.g., Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not Stepney showed prejudice.").

Turning to the "fundamental miscarriage of justice" exception, the Court notes that this requires a demonstration of "actual innocence." E.g., Calderon v. Thompson, 523 U.S. 538, 559 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992) ("The miscarriage of justice exception is concerned with actual as compared to legal innocence.'). The Supreme Court has emphasized that the exception has a "narrow scope," Sawyer, 505 U.S. at 339. "To be credible," a claim of actual innocence must be based on

reliable evidence not presented at trial[,]" Schlup v. Delo, 513 U.S. 298, 324 (1995); accord Calderon, 505 U.S. at 339. The question of actual innocence "depends on whether it is more likely than not that no reasonable juror would have concluded that [Caswell] engaged in conduct that meets the required elements of each of the charges." Sweet v. Bennett, 353 F.3d 135, 142 (2d Cir. 2003) (citing Bousley v. United States, 523 U.S. 614, 623 (1998)). Caswell has not come forward with any evidence which would have undermined the overwhelming proof of his guilt presented at trial. This claim accordingly is dismissed as subject to an unexcused procedural default.

### 2.   Verdict Against the Weight of the Evidence

Petitioner's argument that the verdict was against the weight of the evidence is not a cognizable constitutional claim amenable to federal habeas review. A weight of the evidence argument is "a pure state law claim" grounded in the Appellate Division's statutory authority under C.P.L. § 470.15(5) to review factual issues. E.g., Black v. Conway, No. 11-CV-0480-GBD-AJP, 2011 WL 2610530, at *11 (S.D.N.Y. June 30, 2011) (citations omitted); Wilson v. Lee, No. 10-CV-0044-MAT, 2011 WL 2516593, at *1 (W.D.N.Y. June 23, 2011); see also Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (denying habeas petitioner's claim of insufficient evidence based on the jury's failure to properly determine witness credibility and weigh evidence because "assessments of the weight

of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal").

### 3. Actual Innocence

The Supreme Court has never held that a freestanding claim of actual innocence present a constitutional claim cognizable in a federal habeas proceeding. Herrera v. Collins, 506 U.S. 390, 417 (1993). Were such a claim available, the Supreme Court has read its precedents as implying that it would require "more convincing proof of innocence than [required under] Schlup" to establish a fundamental miscarriage of justice for purposes of overcoming a procedural default. House v. Bell, 547 U.S. 518, 555 (2006); see also Schlup, 513 U.S. at 316 (citing Herrera and stating that a petitioner raising a claim of actual innocence to excuse a procedural default must meet "less of a burden" than a petitioner raising a freestanding innocence claim). As discussed above in Section IV.B.2, Petitioner does not provide any new evidence whatsoever to support his claim of actual innocence. As the Supreme Court explained in Schlup, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." 513 U.S. at 316.

**C.    Duplicity in the Indictment**

Petitioner contends, as he did on direct appal that count one of the indictment, charging second degree robbery, was duplicitous. Under New York Law, "[e]ach count of an indictment may charge one offense only." N.Y. CRIM. PROC. LAW § 200.30(1). A "duplicitous" count in an indictment charges more than one offense. Timmons v. Lee, No. 10-CV-1155-JG, 2010 WL 3813963, at *10 (E.D.N.Y. Sept. 23, 2010) (citing N.Y. CRIM. PROC. LAW § 200.30(1)).

Count One of the indictment charged, in relevant part, that Petitioner "forcibly stole property from Brian and/or Ashley Eckman." Resp't Ex. E at R4. After the prosecution rested, Petitioner's standby counsel advised the trial court that he was concerned that the second degree robbery count was duplicitous. Counsel explained that there might be a basis to conclude that there were two robberies rather than one alleged in that count, and that the wording of the indictment might prevent the jury from reaching a unanimous verdict. T.595. Standby counsel further stated that Petitioner, who was representing himself, did not want to raise the issue. T.596.

In response to the judge's inquiry, Petitioner explained that he had made any objections that he wanted to make and that he wanted to proceed with the trial. T.596. Petitioner thus did not challenge, at the trial level, the alleged duplicity of the second degree robbery charge, an issue which was raised by appellate

-17-

counsel for the first time on direct appeal. <u>See</u> Resp't Ex.  S at 42.

The Appellate Division found that Petitioner had "failed to preserve" for review his contention that the indictment was duplicitous. <u>People v. Caswell</u>, 56 A.D.3d at 1302-03. The Appellate Division relied upon the contemporaneous objection rule to reject the claim, which, under the circumstances present here, was an independent and adequate state ground for dismissal. <u>See</u> <u>Roldan v. Ercole</u>, No. 08 CV 6548(LBS), 2009 WL 2191176, at *3 (S.D.N.Y. July 20, 2009) ("Because the Appellate Division invoked this adequate and independent state ground in denying Petitioner's claims that the indictment contained duplicitous counts and that the People failed to prove count five of the indictment consistent with the court's jury instructions, this Court is barred from considering the merits of Petitioner's claims.") (citing <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990) (when a state court explicitly invokes a state procedural bar rule, federal habeas review is precluded)).

Accordingly, the duplicitous-indictment claim is procedurally barred from habeas review unless Caswell shows cause for his default and actual prejudice, or that the failure to consider his claim will result in a fundamental miscarriage of justice because a constitutional violation has resulted in the conviction of an actually innocent person. <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. at 85,

91. As discussed above, Caswell has not made any of the required showings. This claim is dismissed as subject to an unexcused procedural default.

### D.   Erroneous Admission of the Victim's Clothing

Caswell contends that the trial court improperly admitted clothing that Mr. Eckman was wearing during the burglary because (1) the clothing was <u>Brady</u> material and the prosecution failed to disclose it until just before opening statements; (2) the prosecution did not conduct a DNA analysis of the clothing; (3) the prosecution failed to establish a chain of custody for the clothing; and (4) the evidence was prejudicial.

### 1.   Pre-Trial Argument Concerning the Clothing

Prior to opening statements, standby counsel explained that the prosecution had informed him that it was in possession of a shirt worn by Mr. Eckman at the time of the crime, and that it intended to offer testimony that the blood on the shirt was Caswell's. T.248. Standby counsel further indicated that Caswell wished to object before the shirt was shown to the jury. T.249. The trial court explained that it had no written motion <u>in</u> <u>limine</u> and that if Caswell felt that something was inappropriate, he needed to raise it himself. T.249.

Caswell argued that admission of the shirt would be prejudicial because there had been no DNA analysis, the prosecution could not establish that it was his blood on the shirt. Caswell

denied that it was his blood. T.249-50. Explaining the prosecution had not yet offered the shirt into evidence, the trial court suggested that Caswell discuss the matter further with standby counsel. T.250. Caswell not request an order directing that the prosecution submit the clothing for DNA analysis at that time.

### 2.   Mr. Eckman's Testimony

Mr. Eckman testified that during the robbery, Petitioner, who apparently had sustained lacerations during the melee at the liquor store, bled onto him and his clothes. T.497, 509-11. When the police arrived, Mr. Eckman used a garden hose to wash the blood off his body, and he placed his bloody shorts and shirt, unwashed, into a grocery sack, which he kept in his basement from August 27, 2005, until the time of trial. T.510-11. Mr. Eckman stated that the clothes, which he did not wear again, were in substantially the same condition as when he had last worn them on August 27, 2005. T.511-12.

When the prosecution offered the clothes into evidence, Caswell unsuccessfully objected on several bases (chain-of-custody, it had not been established whether DNA analysis was conducted, and it had not been established that the substance on the clothes was blood). T.512-13. After the clothes were introduced into evidence, the prosecutor asked Mr. Eckman to indicate where Caswell's blood appeared on the item. T.513. Caswell objected, stating that the

prosecutor could not "substantiate whatsoever that's [his] blood on those shorts." Id. The trial court overruled the objection. Id.

When Mr. Eckman held up the shirt and testified that there was blood across the chest and on the right side, Caswell objected on the ground that the prosecutor had not established the actual presence of blood on the shirt. T.513-14. The trial court sustained the objection. The prosecutor then elicited from Mr. Eckman that he knew whose blood was on his shirt, and that it was Petitioner's. T.514. The trial court overruled Caswell's hearsay objections, and Mr. Eckman's testimony was received into evidence in its entirety.

### 3.   Alleged **Brady** Violation

Caswell contends, as he did on direct appeal, that the prosecution violated Brady by failing to timely disclose the existence of Mr. Eckman's clothing. The Appellate Division found that claim was not preserved for appellate review inasmuch as Caswell failed to object on that specific basis at trial. People v. Caswell, 56 A.D.3d at 1303 (citation omitted).

The Court agrees with Respondent that the claim appears to be procedurally defaulted and that it is, in any event, without merit. Under Brady, 373 U.S. at 87, prosecutors must disclose material evidence that has exculpatory or impeachment value. There are thus three elements of a true Brady violation: "(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must

have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Suppressed evidence is deemed "material", and prejudice will be found, if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682.

Petitioner has not demonstrated that this evidence was favorable to the defense either because it had exculpatory or impeachment value. Furthermore, due process does not require that Brady material be disclosed at any particular time, simply that the defense has the opportunity to use the evidence when disclosure is made. Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001); accord DiSimone v. Phillips, 461 F.3d 181, 196-97 (2d Cir. 2006). Here, Petitioner could have asked for a continuance to have DNA testing conducted on the clothing, but failed to do so. Finally, Petitioner has not demonstrated prejudice resulting from the prosecution's belated disclosure of the clothing. As Respondent argues, Petitioner's identification as the man who robbed the Eckmans and burglarized their home was not an issue. Mr. and Mrs. Eckman, Spencer, Habecker, and Grabowski all saw Petitioner inside the Eckmans' garage. See T.339, 403-04, 472, 509, 540. And after Petitioner attempted to flee Grabowksi apprehended Petitioner after a brief foot chase during which time the officer never lost sight

of his quarry. T.542-49. There accordingly is no reasonable possibility, much less probability, that the jury would have resolved the case differently if the prosecution had disclosed the existence of Mr. Eckman's clothing earlier.

### 4.   Failure to Perform DNA Testing

Petitioner contends that the clothing should not have been introduced into evidence without first having DNA testing conducted on it. The Appellate Division held that it was "purely speculative" that had a DNA analysis been performed, the results would have been exculpatory. People v. Caswell, 56 A.D.3d at 1303. Therefore, he could not "reasonably argue that he was denied exculpatory material." Id. (quotation and citation omitted). Furthermore, the Appellate Division held, because identification was not at issue, Caswell was not denied a fair trial based on the failure to perform DNA testing.

"There is no general constitutional right to discovery in a criminal case, and Brady did not create one[.]" Weatherford v. Bursey, 429 U.S. 545, 559 (1977). Although due process requires a prosecutor to disclose exculpatory evidence, see Brady, 373 U.S. at 87, it "does not require the government to create exculpatory material that does not exist." Stadler v. Curtin, 682 F. Supp.2d 807, 819 (E.D. Mich. 2010) (dismissing habeas claim that the police failed to discover alleged prior misconduct by witnesses; "[d]ue process does not require the police to seek and find exculpatory

evidence" and the state court of appeals "correctly found that the State had no duty to investigate this case more thoroughly than it did") (citing, inter alia, United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (per curiam) ("[A]ppellant sought to compel the government to make voiceprint analyses of the recordings available for his use. There is no evidence that such voiceprint analyses existed. Brady v. Maryland, 373 U.S. 83, . . . does not require the government to create exculpatory material that does not exist.")).

### 5. Inadmissibility of Clothing Based Upon Failure to Establish Chain of Custody

Petitioner contends that the trial court should not have admitted Mr. Eckman's clothing because the prosecutor failed to establish a proper chain of custody of the evidence. A chain of custody argument presents a question of State evidentiary law that generally is not amenable to habeas review. Gonzalez-Pena v. Herbert, 369 F. Supp.2d 376, 387 (W.D.N.Y. 2005) (citing Estelle v. McGuire, 502 U.S. at 67-68). Under New York law, "failure to establish a chain of custody may be excused 'where the circumstances provide reasonable assurances of the identity and unchanged condition' of the evidence." People v. Julian, 41 N.Y.2d 340, 344 (1977) (quotation omitted). Moreover, both federal and state law clearly hold that a defect in the chain of custody goes to the weight of the evidence, not its admissibility. United States

v. Hon, 904 F.2d 803, 810 (2d Cir. 1990) ("Once the exhibits were admitted into evidence, the alleged defects in the government's chain of custody proof were for the jury to evaluate in its consideration of the weight to be given to the evidence."); People v. Julian, 41 N.Y.2d at 344 ("While the deficiencies in the chain of custody may certainly be used to discredit the weight of the real evidence, those deficiencies were not sufficient to render that evidence inadmissible.").

### 6. Erroneous Admission of Unduly Prejudicial Evidence

Caswell claims that the clothing was erroneously admitted and that the error was prejudicial. To succeed on his claim, he must show that the evidentiary error was of constitutional dimension resulting in fundamental unfairness. Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988). For the erroneous admission of unfairly prejudicial evidence to amount to a denial of due process, the item must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1999)(citations omitted), cert. denied, 525 U.S. 840 (1998).

In this case, Caswell has not shown error in the admission of the clothing, much less an error that violated a constitutional right and resulted in actual prejudice. Under New York law, "[e]vidence is relevant if it has any tendency in reason to prove

the existence of any material fact." People v. Scarola, 71 N.Y.2d 769, 777 (1988). Relevant evidence may be excluded if its probative value is substantially outweighed by its prejudicial effect. Id. Applying this principle to Mr. Eckman's clothing, the Court concludes that they were properly admitted.

The prosecutor elicited testimony from Mr. Eckman that Petitioner bled onto him while Petitioner was retraining him. T.497-98. Mr. Eckman explained that there was blood on his clothing and his arms, but the paramedics determined that Mr. Eckman himself was not bleeding. T.509-10. Since Petitioner, who was bleeding, had physically restrained Mr. Eckman, one logically could infer that the blood on Mr. Eckman's clothes was Petitioner's. The testimony was relevant for the purpose of, inter alia, supporting Mr. Eckman's testimony that he was physically retrained by Petitioner. Moreover, its relevance was not outweighed by its prejudicial effect. Compare with People v. Gagliardi, 232 A.D.2d 879, 880 (3d Dept. 1996) ("The admission of the victim's bloody dress was also relevant to support the victim's testimony that she was dressed when first attacked although she was found to be naked, covered by a sheet, when the police found her.").

**E.  Failure Instruct the Jury on the Defense of Justification**

As he did on direct appeal, Petitioner contends that the trial court denied him a fair trial because it failed to issue a justification charge to the jury pursuant to P.L. § 35.15,

presumably with respect to the count of the indictment pertaining to the attempted robbery of the liquor store. T.592-93. Petitioner contended that there was ample evidence in the record that he "was attacked that day, through no fault of [his] own" and therefore his actions that day "were justified." T. 593. Petitioner cited no record evidence in support of his request. The trial court agreed with the prosecutor that there was no basis in the record to support the justification charge. T.593. The Appellate Division held that the trial court properly denied his request for a charge on the defense of justification. People v. Caswell, 56 A.D.3d at 1304 (citations omitted).

A court sitting in federal habeas typically does not review state-law questions determined by state courts, including the propriety of jury instructions. Estelle v. McGuire, 502 U.S. at 67, 71. Because of the state's interests in finality of judgments and orderly trial procedure, the petitioner's burden when collaterally challenging an erroneous jury instruction or failure to issue an instruction is "even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). A petitioner must show that he was "erroneously deprived of a jury instruction to which he was entitled under state law" before he can viably claim a violation of his due process rights. Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir. 2005); Davis v. Strack, 270 F.3d 111, 124 (2d Cir. 2001).

A person is entitled to defend himself with non-deadly force when imminently threatened by physical force of an ordinary nature, such as a punch to the face. N.Y. PENAL LAW § 35.15(1); see People v. Bradley, 297 A.D.2d 640, 641 (2d Dept. 2002).[2] P.L. § 35.15 provides in pertinent part that

> [a] person may, subject to the provisions of [P.L. § 35.15(2)], use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, . . . from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person, unless: . . .
>
> (b) [t]he actor was the initial aggressor; except that in such case the use of physical force is nevertheless justifiable if the actor has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened imminent use of unlawful physical force. . .

N.Y. PENAL LAW § 35.15(1)(b).

"[I]f the record includes evidence which, viewed in the light most favorable to the defendant and drawing all reasonably permissible inferences in his favor, satisfies the essential elements of the defense of justification, the [justification] charge must be given" to the jury. Davis v. Strack, 270 F.3d at 125. The state court need not charge justification, however, "if no reasonable view of the evidence establishes the elements of the

---

2

"Retreat, however, is not a condition precedent of the use of ordinary physical force in self-defense[.]" People v. Bradley, 297 A.D.2d at 642 (citing Matter of Y.K., 87 N.Y.2d 430, 433). This was not a case in which deadly force was used or threatened to be used.

-28-

defense." <u>People v. Reynoso</u>, 73 N.Y.2d 816, 818 (1988). Although the defense of justification is not deemed unavailable <u>per se</u> to a person accused of criminal mischief, it is intended to be used to deter injury brought about by no fault of the person claiming the defense. <u>People v. Padgett</u>, 60 N.Y.2d 142, 145 (1983) (citing N.Y. PENAL LAW § 35.05(2)).

It is patently clear that Caswell was not entitled to the justification charge. The evidence at trial conclusively established that Petitioner was solely at fault for instigating the physical confrontation by grabbing Habecker's shoulder, pressing an object into his back which Habecker thought might be a gun, threatening to kill Habecker, and throwing punches at him. T.327, 329-31, 335. <u>See</u> N.Y. PENAL LAW § 35.05(2). The uncontroverted evidence was that Caswell was the initial aggressor, P.L. § 35.15(b). Under P.L. § 35.15(1), "the justification defense is unavailable to actors who are the initial aggressors." <u>Thomas v. Duncan</u>, No. 01 CIV 6792 BSJ AJP, 2001 WL 1636974, at *12 (S.D.N.Y. Dec. 21, 2001) (citing N.Y. PENAL LAW § 35.15(1)(b); other citations omitted); <u>see</u> <u>People v. Petty</u>, 7 N.Y.3d 277, 285 (2006) ("When justification is in issue, the trier of fact must first determine whether the defendant was the initial aggressor. If the answer to this question is yes, the justification defense is generally not available to defendant."). Caswell was not entitled to the "initial aggressor" exception in P.L. § 35.15(1)(b) because there was no

evidence that Caswell withdrew the from the encounter, that he communicated such withdrawal to Habecker, and that Habecker continued to use or threaten unlawful physical force, id. The trial court did not err as a matter of state law in determining that Caswell was not entitled to a defense of justification.

Because Caswell has failed to make the threshold showing that the Appellate Division erred as a matter of state law in upholding the trial court's refusal to charge justification, this Court need not reach the question of whether his due process rights were violated. See Davis v. Strack, 270 F.3d at 124 (to grant habeas relief, court must find that the justification charge was required as a matter of New York state law; the failure to give the requested charge violate the due process standard set out in Cupp; and the state court's failure to issue the charge was "of such a nature that it is remediable by habeas corpus, given the [AEDPA] limitations prescribed by 28 U.S.C. § 2254") (emphasis supplied).

## F.   Failure to Order the Prosecutor to Recuse Herself

Petitioner contends that he was denied a fair trial when the trial court refused to recuse the assistant district attorney from prosecuting his case. According to Petitioner, the prosecutor perjured herself when she testified at a pre-trial hearing held to determine whether Petitioner had been improperly denied the opportunity to testify before the grand jury. See Transcript dated

2/17/06 at p. 24.[3] The prosecutor explained that although she had testified at the hearing, it concerned a purely procedural issue, unrelated to the issue of Petitioner's guilt or innocence. See id. at p. 25. The trial court denied Petitioner's request, and the Appellate Division summarily rejected this claim on the merits.

Petitioner does not cite, and neither Respondent nor this Court has found, any Supreme Court, or other federal court, decision that stands for the proposition that a prosecutor who testifies at a pre-trial hearing concerning whether a defendant was accorded an opportunity to testify before the grand jury, may not later represent the state at trial. See Carey v. Musladin, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from the [Supreme] Court regarding this [issue] . . . it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'").

Moreover, Petitioner has not demonstrated a violation of New York law, which requires a defendant seeking recusal of a prosecutor to "make[ ] a significant showing that the prosecutor's prior investigative or prosecutorial conduct will be a material

---

[3]

Caswell moved pro se to dismiss the indictment on the ground that he was not provided with notice of the grand jury presentation, and the trial court granted the motion on the condition that Caswell would testify when the case was presented to a second grand jury. Upon reargument at the prosecution's request, the trial court ordered a hearing and thereafter denied Caswell's motion. This ruling was affirmed by the Appellate Division. People v. Caswell, 56 A.D.3d 1300, *1302, 2008 N.Y. Slip Op. 09241, **2) ("The evidence presented at the hearing established that defendant received notice of the time and place of the grand jury presentation. The fact "[t]hat defendant chose to decline the offer [to testify] does not negate the opportunity afforded him[.]") (internal and other quotations omitted).

issue at the trial." <u>People v. Paperno</u>, 54 N.Y.2d 294, 296 (1981). "Where no such showing is made, however, a conviction will be reversed only when the defendant demonstrates a substantial likelihood that prejudice resulted from the prosecutor's participation in the trial." <u>Id.</u>

Here, any such showing is patently lacking. The presentation of Petitioner's case to the grand jury was utterly irrelevant to the issues to be determined at trial. The claim that the prosecutor committed any impropriety is based solely on Caswell's own unsupported and speculative assertions. This claim is frivolous and must be dismissed.

### G.   Errors at Sentencing

Caswell's petition, liberally construed, may be read as asserting that (1) his sentencing under New York's mandatory persistent violent felony offender statute violated <u>Apprendi v. New Jersey</u>, 530 U.S. 566 (2000); (2) the sentencing court erred in imposing consecutive sentences; (3) his sentence is excessive; and (4) the prosecution did not establish that Petitioner was a persistent violent felony offender based on two prior violent felony convictions, including an Illinois conviction. In passing, Petitioner claims that he was unable to demonstrate error in his sentencing on direct appeal because he was deprived of the exhibits utilized by the prosecution at the sentencing hearing.

### 1.   The <u>Apprendi</u> Claim

In <u>Apprendi</u>, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 490. Thus, <u>Apprendi</u> is inapplicable to judicial fact-finding regarding a defendant's prior convictions. By excepting a defendant's prior convictions from its proscription against judicial fact-finding, <u>Apprendi</u> expressly reaffirmed <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 239-45 (1998) (rejecting a challenge to a statute authorizing the sentencing court to impose a sentence in excess of the statutory maximum upon the sentencing court's finding that the defendant previously had been convicted of an aggravated felony). New York's mandatory persistent violent felony offender statute–unlike its discretionary persistent felony offender statute–has never been held to implicate Sixth Amendment or due process concerns. The Appellate Division's rejection of this claim was a correct application of federal law.

### 2.   Consecutive Sentences

Petitioner contends that the sentencing court erred in imposing consecutive sentences. "[T]here is no constitutionally cognizable right to concurrent, rather than consecutive, sentences." <u>United States v. McLean</u>, 287 F.3d 127, 136 (2d Cir. 2002) (quotation omitted). Consequently, the question of "whether

sentences should be made to run concurrently or consecutively is purely a question of state law and is not cognizable on a habeas petition." Reyes v. People, No. 08-CV-8645-GEL, 2009 WL 1066938, at *2 (S.D.N.Y. Apr. 21, 2009) (citing McLean, 287 F.3d at 136037). Here, there was no error of state law, much less an error of constitutional magnitude, since the state court was authorized to impose a consecutive sentence under P.L.§ 70.25 because separate acts were committed against different victims, and no act was a material element of the other acts. See People v. Truesdell, 70 N.Y.2d 809, 811 (1987) (citing N.Y. PENAL LAW § 70.25(2) ("When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences, except if one or more of such sentences is for a violation of section 270.20 of this chapter, must run concurrently.").

### 3.   Excessive Sentence

Petitioner claims that his sentences were excessive, but these claims do not present constitutional questions amenable to federal habeas review. See, e.g., Bellavia v. Fogg, 613 F.2d 369, 373-74, n. 7 (2d Cir. 1979) (sentencing statute is properly the province of the state legislature and long mandatory sentence imposed pursuant to statute did not constitute cruel and unusual punishment).

The attempted third degree robbery offense is a Class E nonviolent felony, P.L. §§ 110.00, 160.05. Because Petitioner had at least one prior felony conviction, the sentencing court was required to sentence him as a second felony offender for that offense pursuant to P.L. § 70.06, with a maximum term of at least three but not more than four years, and a minimum term of half the maximum term. N.Y. PENAL LAW §§ 70.06(3)(e), 70.06(4)(b). Petitioner received an indeterminate sentence of two to four years, well within the statutory limits.

The sentences imposed for second degree robbery (P.L. § 160.10(2)(b)), and second degree burglary (P.L. §§ 140.25(1)(d), 140.25(2)), likewise were proper. These offenses were class C violent felonies. N.Y. PENAL LAW § 70.02(1)(b). Because Caswell stood convicted of a violent felony and had two predicate violent felonies, he was a persistent violent felony offender. See N.Y. PENAL LAW § 70.08(1)(a). Therefore, the sentencing court was required to impose a mandatory indeterminate term, the maximum length of which was life imprisonment, N.Y. PENAL LAW § 70.02(2), and the minimum length of which was sixteen to twenty-five years, N.Y. PENAL LAW § 70.08(3)(b). Petitioner received concurrent indeterminate sentences of twenty-five years to life for the second degree robbery and second degree burglary convictions. Although they were the maximum possible, they still were within the statutory range.

All of Petitioner's sentences were with the statutory limits, and no constitutional issue is presented. <u>See</u> <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992). These claims are dismissed as non-cognizable.

### 4. Failure to Establish Status as Persistent Violent Felony Offender

Petitioner contends that the prosecution did not properly establish the predicate felony convictions[4] necessary to have him adjudicated as a persistent violent felony offender, and the court erred in imposing sentence under P.L. § 70.08. On direct appeal, Petitioner argued that certain documentary evidence relative to the recidivist finding was not properly introduced into evidence.

The Second Circuit has held that "whether a foreign conviction can serve to enhance a New York State sentence is a question of state law not cognizable on federal habeas review." <u>Id.</u> (citing, <u>inter alia</u>, <u>United States ex rel. Dennis v. Murphy</u>, 265 F.2d 57, 58 (2d Cir. 1959) (<u>per curiam</u>) ("The use of a Canadian conviction in the application of the state multiple offender law is one of state procedure and presents no federal question.")). Moreover, "[w]hether a New York court erred in applying a New York recidivist sentencing enhancement statute is a question of New York State

---

[4] The two predicate felonies used by the prosecution were as follows: a second degree burglary conviction from November 23, 1998, in Onondaga County Court; and a February 28, 1994, armed robbery conviction from Circuit Court of the Tenth Judicial Circuit of Illinois, which the prosecution argued was comparable to first degree robbery under P.L. § 160.15.

law," and "it is well-established that '[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Saracina v. Artus, No. 10-3898-pr, 2011 WL 6353684, at *2 (2d Cir. Dec. 20, 2011) (unpublished opn.) (quoting McGuire, 502 U.S. at 67-68). Caswell's challenge to his sentencing under New York's is dismissed as not cognizable on habeas review. Accord Saracina, 2011 WL 6353684, at *2.

### 5.   Deprivation of Documents on Appeal

Petitioner claims he was denied of a meaningful appeal because he was deprived of the prosecution's exhibits used at the sentencing hearing. However, as Respondent points out, the exhibits introduced at the hearing were contained in the appendix submitted by Petitioner's appellate counsel on appeal. See Resp't Ex. E at R333-60; Transcript of Sentencing Hearing at 64-70 (hereinafter "S.___"). Thus, Petitioner's claim of error is not supported by the record.

### H.   Failure to Disclose Police Reports

Petitioner contends, as he did in his C.P.L. § 440.10 motion, that the prosecution deprived him of the follow items, which he classifies as Brady material: (1) a police report by Officer Renz indicating that a second surveillance videotape had been obtained which showed Petitioner's arrest; and (2) a police report indicating that traces of blood were recovered the Eckmans' car and sent to the police laboratory for testing.

Here, Petitioner has not established suppression, a necessary element of a Brady violation, since he was provided with the relevant reports before trial. See Resp't Ex. Q, ¶8. Moreover, the reports do not constitute Brady material. Officer Renz's report states only that he asked another officer to look into obtaining a digital videotape of Petitioner's arrest at the gas station. See Resp't Ex. Q, ¶11. If the videotape in fact existed and if Petitioner was not afforded an opportunity to review it, the content would only have related to Petitioner's arrest, after he ran from the police, and not the commission of his crimes. Thus, Officer Renz's report was not "material" to the jury's determination of Petitioner's guilt or innocence.

The documents authored by Officer Rice merely acknowledged that blood was collected from the Eckmans' car and sent to the Public Safety Laboratory for testing. See Resp't Ex. Q, ¶12. Since, as discussed above, identification was never at issue because–as he stated to the police–he was caught "red-handed", the prosecution had no need to request DNA testing and never did so. Resp't Ex. Q, ¶12.

The C.P.L. § 440.10 court correctly determined that Petitioner failed to establish that the purported failure to disclose contributed to the jury's verdict. C.P.L. § 440.10 Order at 3, Resp't Ex. S. Even if there had been a Brady violation, it was harmless giving the overwhelming evidence of Petitioner's guilt, as

Respondent argues. See Strickler v. Greene, 527 U.S. at 281 (noting that even where the prosecution has "breach[ed] [its] broad obligation to disclose exculpatory evidence[,] . . . there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict").

I.   **Unconstitutionality of C.P.L.R. § 5525**

Petitioner asserts, as he did on direct appeal, that the procedure for correcting transcripts as set forth in C.P.L.R. § 5525 was unconstitutionally applied to him. The Appellate Division rejected this claim on the merits, finding that the procedure comported with due process. People v. Caswell, 56 A.D.3d at 1303 (citing Burrell v. Swartz, 558 F. Supp. 91, 92 (S.D.N.Y. 1983); Curro v. Watson, 884 F. Supp. 708, 718 (E.D.N.Y. 1995), aff'd mem., 100 F.3d 942 (2d Cir. 1996)).

The constitutional adequacy of New York's procedures for correcting transcripts is a settled issue in this Circuit. See Molina v. Kay, 956 F. Supp. 261, 264 (E.D.N.Y. 1996) (denying § 1983 plaintiff's due process claim for failure to videotape criminal proceeding because written transcripts were uniformly approved as acceptable means of recording legal proceedings and "when those transcripts are missing or inaccurate, sufficient procedures exist in New York to ensure fair appellate reviews

decision was a correct application of federal law.") (citations omitted).

**J. Deprivation of the Right to a Meaningful Appeal**

Petitioner contends that he was deprived of a meaningful appeal because, as he mentioned in his C.P.L. § 440.10 motion, the prosecution refused to provide him with a copy of "People's Exhibit #9." Neither the District Attorney's answering affirmation, nor the trial court's C.P.L. § 440.10 decision specifically addressed this claim. The trial court denied the motion "in its entirety" and did not specifically rely on a procedural ground with reference to this claim.

People's Exhibit #9 is the original liquor store surveillance videotape. T.283. When played on a normal VCR its, speed is substantially faster than real time. T.317. People's Exhibit #22 is a fair and accurate recording of the same images that appear in Exhibit #9, but it depicts those images in real time and may be played on a regular VCR. T.318-19. At trial, both exhibits were introduced into evidence, but only People's Exhibit # 22 was played for the jury. T.350.

Contrary to Petitioner's contention, he was provided, before trial, with both People's Exhibits #9 and #22. Resp't Ex. B, ¶4. When Petitioner moved for a subpoena duces tecum from the Appellate Division directing production of those exhibits, the prosecution stated that they had "no objection to making an additional copy of

each exhibit" if Petitioner provided a blank VHS tape suitable for copying. Id., ¶4. The prosecution further stated that they had no objection to providing the original exhibits to the Appellate Division. Id., ¶5. In light of this factual background, the Court finds that Petitioner's claim is spurious and must be dismissed.

Petitioner also contends that he was denied a meaningful appeal because he was deprived of a copy of his persistent violent felony statement and a copy of the prosecution's sentencing exhibits. These contentions are belied by the record. The prosecution served Petitioner with a copy of his persistent violent felony statement, see S.33-34. Copies of the exhibits that the prosecution introduced into evidence at the sentencing hearing appear to be annexed to the appendix on appeal submitted by Petitioner to the Appellate Division. See Resp't Ex. E at R333-360; S.60-61, 64-70.

## V.   Conclusion

For the foregoing reasons, Reggie Caswell's request for a writ of habeas corpus is denied and the petition (Docket No. 1) is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and FED. R. APP. P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith, and therefore the Court

denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438, 445-46 (1962). Any application for leave to appeal <u>in forma pauperis</u> must be made to the Second Circuit Court of Appeals in accordance with FED. R. APP. P. 24(a)(1), (4), & (5). <u>See</u> <u>id.</u> Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      March 26, 2012
            Rochester, New York